Eric VanORMAN, Plaintiff,

v.

Joseph SHOOK, individually and in his capacity as County Supervisor, Farmer's Home Administration of the United States Department of Agriculture; and the United States of America, Defendants.

No. K 84–183.

United States District Court,
W.D. Michigan,
S.D.

Jan. 15, 1985.

David Anderson, Lansing, Mich., for plaintiff.

Anne Vandermale Tuuk, Asst. U.S. Atty., Grand Rapids, Mich., for defendants.

## OPINION

ENSLEN, District Judge.

This lawsuit involves six common law and statutory tort claims against a federal official, the County Supervisor of the Farmers Home Administration (FmHA). Plaintiff VanOrman, who obtained a $10,-000 FmHA loan through the Rural Youth Program to raise dairy cattle, alleges that Defendant Shook improperly accelerated the loan account, in effect libeling him, causing him mental and emotional distress, interfering with the contract, abusing process, and acting in contempt. The lawsuit was removed by Shook to federal district court and is before the Court on Shook's Motion to Dismiss or for Summary Judgment.

The facts of the case are substantially undeveloped. The sole evidentiary support for Plaintiff's conclusory pleadings is a copy of the loan agreement. The Defendants filed an affidavit of the State Director of FmHA, Calvin C. Lutz, attesting to the fact that Shook was acting in his official capacity at all times pertinent to this lawsuit. Both parties correctly argue that this lawsuit depends on the threshold issue of official immunity. Defendant Shook argues for dismissal because he is absolutely immune under the rule of *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) (federal officials acting within the scope of their employment are absolutely immune from liability for torts involving discretionary activity). Plaintiff VanOrman argues that only qualified immunity is applicable, and inasmuch as qualified immunity is largely a factual issue, it precludes summary judgment. *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

■ The issue of executive immunity is, as the parties' diametric arguments indicate, an issue of some subtlety. The basis of the immunity doctrine is quite clearly to provide federal officials relief from liability and permit the "defeat of insubstantial claims without resort to trial" which might otherwise vex the federal executive and tax the federal system. *Harlow, supra,* 457 U.S. at 813, 102 S.Ct. at 2736. Application

of the immunity bar, however, depends on numerous variables, including the office of the Defendant, *Eastland v. United States Serviceman's Fund,* 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975) (legislators); *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (judges); *Butz, supra,* (prosecutors and adjudicatory officials); *Nixon v. Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982) (President); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (high state officials); *Harlow, supra,* and *Butz, supra* (federal officials, generally). Characterization of the actor's scope of employment and type of employment—discretionary or ministerial—bears heavily upon the analysis of immunity in some cases. *Id.* Finally, the character of the claim—common law tort, constitutional injury, statutory injury—significantly affects the immunity analysis.

■ Against the backdrop of doctrinal sublety, Plaintiff argues persuasively that Defendant Shook should not be immune. Plaintiff cites many of the general rules and some of the most compelling dicta to suggest that qualified immunity should be the rule in this case. In relying on *Harlow* and *Butz,* however, Plaintiff fails to take into account the significant fact that those cases dealt with constitutional and statutory violations, whereas the instant case is based on tort law. While it is clear that *Harlow* and *Butz* established that qualified immunity is the general rule in cases of constitutional and statutory violations, it is equally clear that *Barr* established absolute immunity as the rule in cases of common law and statutory tort. Although that rule was a "close question" at the time *Barr* was decided, *Barr v. Mateo,* 360 U.S. at 574, 79 S.Ct. at 1341, subsequent Supreme Court opinions and lower court decisions have established the rule as a firm one. An individual federal official may not be found liable for common law violations committed within the scope of employment involving discretionary activity. *See, e.g., Strothman v. Gefreh,* 739 F.2d 515 (C.A.10 1984); *Granger v. Marek,* 583 F.2d 781 (C.A.6 1978); *Hall v. United States,* 704 F.2d 246 (C.A.6 1983); *Queen v. TVA,* 689 F.2d 80 (C.A.6 1982) *cert. den.,* 460 U.S. 1082, 103 S.Ct. 1770, 76 L.Ed.2d 344.

■ To have acted within the scope of employment means simply that the act would justifiably address a purpose of the employment. *Barr v. Mateo, supra* citing *Gregoire v. Biddle,* 177 F.2d 579 (C.A.2 1949). Here, Shook, as County Supervisor for the FmHA, was invested with the duty and power to take action to secure the FmHA's interest. 7 C.F.R. § 1962.2(b); 7 C.F.R. § 1962.40. Although it is unclear precisely what circumstance or circumstances led to the acceleration of Plaintiff's account, it is not disputed that the FmHA's interest may have been implicated by the changing conditions of the security for the loan. It would appear, therefore, that Shook acted within the scope of his employment in reacting to the changing circumstances. *See also,* affidavit of Calvin C. Lutz, attached to Defendants' brief.

■ The County Supervisor's duties, though reasonably well established by regulation, leave quite a bit of room for the County Supervisor to exercise his or her discretion. *See, e.g.,* 7 C.F.R. § 1962.40. An FmHA County Supervisor has the power to act in a manner that is discretionary and not merely ministerial. *Youngstrom v. Dunn,* 447 F.2d 948 (C.A.8 1971).

■ Plaintiff argues that, regardless of the failure of the common law causes of action, his state statutory claims involving abuse of process must fall outside the absolute immunity of Shook from common law claims. Plaintiff cites Michigan's codification of the abuse of process and malicious prosecution actions. Indeed, in Michigan, malicious prosecution is both a common law and a statutory cause of action. *Drouillard v. Metropolitan Life Insurance Company,* 107 Mich.App. 608, 310 N.W.2d 15 (1981). Yet the codification of common law cannot gut the immunity doctrine; and so the Court cannot accept Plaintiff's reasoning in this regard.

Plaintiff has attempted to buttress his case by amending his Complaint in such a way as might circumvent the *Barr* rule of common law immunity. Plaintiff has added a constitutional cause of action in Count 7 of the Amended Complaint, citing the right to privacy and two landmark cases, *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). It is true that those cases were written in regard to "privacy" concepts, but the concepts as applied therein, absent some twisting and turning, would not appear to apply to this case. *Griswold*, a landmark case involving the use of contraceptives, dwells in that complex and questionably viable region of the law known as "substantive due process". *Katz* a surveillance case, dwells in or about the Fourth Amendment. Again, absent explanation, the Court does not view the amended Count 7 as a serious pleading or as a valid exception to the *Barr* rule.

Plaintiff has also added a count, in the Amended Complaint, under the Federal Tort Claims Act. The Court need not refer at length to this count because, as Defendant Shook correctly notes in his responsive pleadings, the prerequisites to bringing an FTCA action against the FmHA have not apparently been satisfied. There is no proof of exhaustion with the agency, nor any attachment of the requisite form.

As the Defendants graciously points out at some length, Plaintiff has available a viable source of relief in the FTCA, and Plaintiff may still exercise that possibility. 7 C.F.R. § 1814 (1983). And, inasmuch as the subject was first broached by the Defendants, the Court notes that the instant ruling is not determinative of any essential definition of elements common to an FTCA action and the instant action. *Estate of Burks v. Ross*, 438 F.2d 230, 234 (C.A.6 1971).

Accordingly, Plaintiff's amendment of the Complaint is denied, Defendants' motion is granted, and this case is dismissed without prejudice to Plaintiff's alternative relief.